We now go to United States v. Barton. May it please the Court, Gerald Smith, Federal Defenders of Eastern Washington. Your Honors, not surprisingly, Blakely seems to be the special of the day on the menu. We did not seek additional briefing prior to today, and the only explanation I have for that, Your Honors, is that since almost immediately after Blakely came out and still currently I have been in trial and have not had the opportunity to fully analyze the issue, I would ask the Court to take one of two approaches, and that would be to allow us to submit supplemental briefing on the Blakely issue. The alternative is if the Court — If you prevailed on the issue you raised, you wouldn't need Blakely, is that right? That's what I was going to say. If the Court determines that the sentencing issue we raised should result in a vacation of the sentence, we can, of course, address the Blakely issue in the district court with whatever guidance might be provided either by this panel or some other panel of this Court. We did raise three issues, and I would like to address the sentencing issue today. I think that the briefing is fairly self-explanatory on the remaining two trial issues of allowing the deposition testimony and insufficiency of the evidence. The district court determined the offense level by calculating the loss amount in this case as the total amount of the loan, and it did that by basing its analysis on the intent and the ability of the defendant to repay the loan, determining that there was neither intent nor ability to repay the loan, and therefore the intended loss was the full amount of the loan. It's our contention that the district court engaged in only part of the analysis and did not go further to determine what the collateral that the lenders had a lien on through a mortgage, what the value of that was in comparison to the total amount of the loan. The collateral that you're talking about, I take it as the land, not the nonexistent tractors and so forth. That's correct. The lenders had a security interest through the mortgage in the land. Now, the government in its response cited cases that said, well, that doesn't matter if there was no intent to repay, but those cases don't exactly say that because there is discussion about collateral, and those cases do say that the fact that there is collateral in which a lender has a security interest doesn't automatically mean that the value of that collateral is deducted from the amount of the loan to find the intended loss. But what they do say is that if the defendant intended to permanently deprive the lender, the person who held the lien, of the collateral by concealing it, hiding it, absconding with it, then the loan is the proper measure of the intended loss. In this case, we're talking about land. And frankly, I know of no way that land can be hidden or absconded with from the person who holds the lien. And I think that the district court … Judge vaguely indicated that while it couldn't be absconded with, it could be encumbered in such a way, sold to someone else or somehow made difficult to get hold of. The lenders had … He had a comment about irrigation and some notion that he would be trying to get to something with the irrigation system. If I'm recalling the comment that you're referring to, that came in determining what the actual value of the land was. And part of the issue, and we raised this with respect to the sufficiency, was that there was a stated intent to irrigate the land, which would, of course, increase the value. And the court did say there's no indication of the ability to do that. With respect to somehow selling the land or otherwise encumbering it, the court said that's the only way it could be done. Well, it was already encumbered. The lenders had a first mortgage on the land. So regardless of what might have happened in terms of using the land for further … So I guess I have two questions. First of all, does it matter what guideline year we apply to this as to whether your argument works or doesn't? And I'll give you my other argumentation question, too, which you can deal with afterwards. And that is exactly what you want us to deduct. Do we deduct the value of the land? We don't do it anyway, but what you would have the district court deduct? The value of the land, there was also some prepayments. On the other hand, there were some costs in getting the mortgage that presumably didn't go to the … that would not come back on the land. So what exactly would fall into your theory? Certainly the cost or the value of the land at the time and the prepayment. The prepayment was part of the negotiation. This wasn't something that just happened to go back to the lenders. That was part of the negotiation, and any prepayment must automatically be deducted from the intended loss because that was money that was never received. It was simply on paper. With respect to the … What version of the guidelines do you contend should apply? What year? I believe the Court correctly applied the … I believe it was the 1998 version. I don't have that right in front of me. To what extent is your argument premised on the amendment number 617? Your Honor, it's our position that that amendment was a clarifying amendment, that that simply clarified what the guidelines had always meant with respect to the calculation of loss. It is a little confusing when at one point they say it's a substantive amendment and then they say it's a clarifying amendment. It is, but I think that if we look at the case law that I cited in the reply brief, that it is apparent that that is a clarifying amendment because that goes … It is in line with what those cases were saying about the proper calculation of loss amount when there is lien on collateral as part of the entire process of making the loan. So I think to that extent it is clarifying. We cited that in the brief, that commentary, and it is commentary to guidelines that were amended after this case, but because it's our position both that it is a clarifying amendment as well as providing some guidance generally to how the guidelines should be applied, I think that certainly the guidelines in effect at the time of the offense are the properly applied guidelines. The government did state that the argument that we're making is without merit because the deed was not given to the lenders until a couple of years later. That has nothing to do with the lien that the lenders had on the property. They had started foreclosure based upon the lien via the mortgage, and rather than fight foreclosure, the defendant simply deeded the property to them completely. So it's our position, Your Honor, that the district court did not fully take part in the analysis that it should have. I see I have slightly over a minute left. I'd like to save that for rebuttal. May it please the Court. Rick Winker on behalf of the United States. I'm an assistant United States attorney here in the Eastern District of Washington. I received the court's note in that I should be prepared to argue Blakely orally. I received that yesterday afternoon and am prepared to do so. And I heard the court's earlier comments about its opinion on whether or not this panel will be the one to tee up the Blakely issue in its entirety. But I would argue that in this case in particular, that the Blakely issue is not right, that in this case there were no objections as to, for instance, which version of the guidelines. The parties agreed that the 1998 guidelines should be applied by the sentencing court. So that agreement does tee up the Blakely issue. There were no other Fifth or Sixth Amendment constitutional objections to the guidelines raised. So I would argue that there is no Blakely issue in this case, plus the indictment being a rather detailed indictment in this case, and no objections as to the figures, the $646,000, $118,000, the figures that we're discussing as to which should be the measure of loss, those were never objected to by the defendant at trial either. So I would argue that there is no disagreement about the application of the guidelines, that it wasn't preserved at trial, and that if the court were to do any analysis, it would be the plain error analysis discussed in Cotton. And I would argue that based on that analysis that, again, it wouldn't survive any sort of Blakely review, assuming the court gets to the question of whether or not Blakely applies to the Federal guidelines. I'm sorry. If we were to agree with your opponent that this case has to go back because there should be a deduction for the mortgage property, we could simply duck the issue by sending it back, saying this is wrong, and leave it up to the district court to determine whether Blakely applied or not. I mean, that's a really easy way out for us. Your Honor, that would be. And I'm sure that if the court is inclined to look at ongoing Blakely analysis in the context of this case, that that would be a tempting way to resolve it and preserve the issue for another day. I would argue, however, that based on the merits, we're looking at, obviously, in a guideline analysis. But even looking at sort of if you take the guidelines away, just looking at this case in terms of sort of baseline jurisprudence, you know, what did the defendant intend? What was the intended loss? Those facts were tried. How could he have intended that they lose the value of the land when he knew they could come and foreclose on the land? What kind of intent is that? Well, Your Honor, there are a couple of things that are unique to this case, and that is that the defendant has engaged, and these facts were though not the focus of the presentation of the jury, but obviously in the context of the defendant's conduct with his multiple land schemes, multiple equipment trades, sort of a shuffle, sort of a card game. They had a useless lead on the equipment, and that doesn't deduct anything. Right. But, again, we're talking about the defendant's intent of his intended loss. And though, you know, theoretically, we would presume that land can be found and that eventually, if you have a properly recorded lien, again, if you have a properly recorded lien. They have a properly recorded lien. Presumptively. It didn't go to trial on that issue. But the defendant fought it for six months until he finally, almost two years after. So it could be that in calculating the intended loss, you put some amount of money in for the fact that he was intending to make it difficult, and, therefore, there was going to be some attorney's fees. So that doesn't count. The analogy I would make is kind of like assault with a deadly weapon with the intent to kill. If I'm charged with that offense and I commit that offense, I don't kill that person. But I sure as heck meant to. In this case, the defendant sure as the analogy. What he meant to do here was to get some money over and above the value of the land, which he did. And he pocketed it and he spent it. But he meant to do other things, too, with it. I would argue whether or not he successfully was able to get there eventually to use the land for other purposes. The defendant's pattern is to use whatever collateral he – collateral, whether it's properly recorded, leaned away, has actual no inherent value, but he uses that as collateral to show others, see, I'm a stable man. And that's his intent, to possess the property. That's what he intended when the crime was complete. And whether or not – Question. Yes, Your Honor. Is this the standard, the one that you're now arguing for, that the district judge applied? I'm sorry? Is this the standard that the district judge applied? In other words, my understanding of what the district judge did was something much more mechanical. He essentially said the amount of the loan is X amount of money. That's what he intended to provide. And also looking at the defendant's intent, intent to repay. And based – and the Court mentioned the defendant's background, you know, what kinds of schemes he was engaged in. But what he was – And bankruptcy. But what he intended to repay was the money of the loan with that regard to the collateral. And you're making an argument now that says that he might have been able to find that he intended to do something sketchy with the collateral. But he seemed to be deciding on a legal theory that just disregarded the collateral. Is that not true? But – well, my point is, is that the defendant relies on the assumption that the victims will be able to recover that collateral. That because it's real estate, that they have to be able to recover that collateral. And the Court should assume that. My point is, no, you can't assume that. I'm asking you what standard the district court applied. Well, first of all, the Court did mention – we had a week-long trial in this case. And the Court did mention facts. So I would argue the Court took the facts of the defendant's longstanding, or at least up until the time he executed the scheme and thereafter, the defendant's pattern and conduct. And the Court mentioned that. It mentioned the fact that he had applied for bankruptcy several times. And looking at his solubility and his ability to develop the land. And if we were to come back with – first of all, so I would argue the Court didn't apply a mechanical standard. And if we were to come back with an equally mechanical standard to say, well, it should be the, you know, whatever, you know, purchase price at $19.99 or maybe not quite that much, take into account the efforts that had to go to get the lien and that sort of thing. And the fact it was fallow for two years. You know, even if we applied some other mechanical standard, what I'm arguing is that that's not the standard intended by case law and the guidelines. It's the defendant's intent at the time the crime was complete. But you would take – as I understand what you're saying. The defendant wanted to keep that land. You would essentially apply a standard that comports with the 2001 guidelines and comments, whether or not those comments are directly applicable or not. And with a McCormick opinion. And you would recognize that the value of the collateral can be relevant to his intent. In some cases. But not in this case. The value of the collateral in this case is not relevant to his intent because, I would argue, the defendant wanted – when he executed the scheme, he wanted to keep that land. And that even two years later or a year and a half later, he was still trying to keep that land. And that – but for the victims in this case, and we still don't know – there were some problems that the victims had in recording their liens and making sure things were recorded properly. And we're presuming that as a matter of law in all cases dealing with real estate, that a victim will always have a perfected lien. And in this case, that might not have been true. So I would argue we're going not to a mechanical what's the value of the collateral, but instead what's the defendant's intent when the crime is complete. And you hold the failure to perfect a valid lien against the defendant? No, Your Honor. But what I would hold against the defendant was the fraud he committed to get the land wrongfully to begin with. And that's why I'm arguing that it should be the total value of the amount defrauded. What about Amendment 617? Do you think it applies? Well, Your Honor, I do think that the 1998 – and I stipulated that the 1998 version of the guidelines applies. Well, what about 617? It was – I think came out after conviction but before sentencing, didn't it? I believe so. I don't – I'm sorry, Your Honor. I don't recall the exact timing of when that amendment applied. But – Do you think that changed the landscape for determining the intended loss? Well, I think ultimately whether you look at that amendment or even the earlier amendments, I don't think – well, again, I agree that the 1998 version of the guidelines should apply. So I would argue no, it doesn't. But whichever version you apply, we're still looking at the same sort of core issue, and that is what is the defendant's intent when the crime was complete. And I would argue, based on the facts of this case and the analysis that the court held, that the defendant intended to keep this land, and that – and it's not a mechanical application. One other question. How on that theory would the prepayment amounts not at least get subtracted? Those prepayment amounts were figured when he had the mortgage to begin with. That's something that the lenders engineered as a condition of the mortgage. In other words, that prepayment is part of the $646,000. In other words, you're saying – I'm sorry. You're saying that the 600 – but why wasn't he given credit for that? He couldn't have intended to deprive anybody of that. But he – that – the prepayment wasn't any money that the defendant gave the lenders. It was amount already calculated in the amount of the loan. In other words, the $646,000 includes that first six months' prepayment. So, in other words, when he stole the $646,000, that includes $46,000 of the first six months of prepayment. I'm sorry. I'm really not understanding this. But they got that $46,000. Therefore, he could not have intended to deprive them of it. Well, he did – well, he intended – he couldn't have gotten the land without the entirety of the loan, including the first six months of prepayments. It's the use of the money that he – He could not have intended to deprive anybody of that money because they had – they got it. How much was paid to him as the proceeds of the loan? $600,000? A – no. As far as the overage, as the Court may recall, the purchase – the final purchase price was about $430,000-some-odd. Then there was the $600,000. He actually pocketed, after costs and everything else, $118,000 in cash, which he spent within the – But the $46,000 – I mean, that's why I'm having a lot of trouble with these calculations. There was a loan to $646,000. That's what the Court considered to be the amount. But $46,000 he never got in any form. Well, but he did – I would argue he did get it because – He automatically repaid it. He might not have voluntarily repaid it, but he repaid it. Again, I would disagree because we're talking about the use of – this is money that had to be used in order to get the property to begin with. And this is all part of what he intended to deprive the victims of to begin with. And they were paid $46,000 of this. But in any event, the measure is whether or not it's over $500,000 anyway. Put it this way. It would qualify for that guideline enhancement. When the loan was closed, who controlled the $46,000? The victims. The victim had the money? Well, not at the time it was closed. When – well, that – the whole amount of $646,000 was transferred to the closing proceedings. Who controlled the prepayment of $46,000? The – well, the victims, because a certain amount was held back, and that was the amount of prepayment. Who held it? The victims in this case. The mortgage company. The lending company. Well, they had the money. There's no way he could have deprived them of that. Yes, Your Honor. As far as physically depriving them of the money, you're correct in that part. But, again, it's whether or not that guy – even if you take that into account and you don't argue, well, he used that money and he had to have that money to execute the scheme and artificially defraud, and that was all part of what he intended to take from them to – But you see the problem, and that really is what demonstrates that you're not applying an intent standard. And you're not asking the judge to, and the judge didn't. Because if the question is what he intended to deprive them of as opposed to what he intended to take initially, you couldn't possibly get that $46,000 into the loss calculation. Right. So you're not applying a consistent – you're not applying the theory that you stood up here and told us you were applying, nor did the district court, which is what he intended to deprive them of as opposed to whether he intended to repay the loan. I understand. But as far as – if the court takes exception with that $46,000, I would argue that doesn't have any net effect in any event as far as the ultimate sentence that the court imposed on the defendant anyway, because that standard – I'm thinking about what standard was actually used. Well, I would just ask the court to look again at the sentencing court's comments, and I would argue he did take that into account. Thank you very much. Thank you. There in the excerpts, the comments – the district judge's analysis of the sentence appears. No, he said to look at the district judge's comments. Where are the district judge's comments? I don't – Okay. That's fine. It's referenced in the briefing, and it would be toward the end of the sentencing transcript. And, of course, the sentencing judge did mechanically apply standards here, said there was no intent to repay, and therefore the total loan amount is the loss. There was no discussion about could the lenders have recovered the land, what was the cost of recovering the land, should that be calculated in the intended loss, because the district court completely precluded the issue of the lien in the land in determining that because there was an intent not to repay, the amount of the loan was the total amount of the intended loss, and it was a mechanical application. The issues that have been raised by Mr. Winokur in his arguments here are factual matters that it may or may not be appropriate for the district court to determine with respect to what was the actual value, what was the actual cost, and how much of the cost to the lender should be calculated in the intended loss once the district court properly analyzes the effect of the lien in the land and the value of that land in its analysis of what the appropriate loss figure is for the guidelines. And if I may just very quickly in response to the Blakely issue, and if I understand the court correctly, we're not really involved in that today, but in addition to the loss amount, there was the issue of a two-level increase for the number of victims. And also with respect to any waiver at trial, the entire issue of fraud in general and the amount was hotly contested during trial, so there was no waiver. May I, the court, to answer the court's question, send the Volume 2 Supplemental Excerpts of Records pages at the bottom, 624 to 630. Thank you very much. Thank you. Thank you, counsel. The ICA v. Barton is submitted.
judges: B. Fletcher, Hamilton, Berzon